# United States District Court
## District of New Jersey

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. MARK FALK |
| v. | : | **CRIMINAL COMPLAINT** |
| ANTONIO VAZQUEZ, a/k/a "Panta" | : | Magistrate No. 12-3712 |
| | : | |

I, Jordan Benson, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. From at least as early as in and around September 2012 through on or about November 30, 2012, in Union County, in the District of New Jersey and elsewhere, defendant ANTONIO VAZQUEZ did:

> knowingly and intentionally conspire and agree with others to distribute and possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), and

> In violation of Title 21, United States Code, Section 846.

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

SEE ATTACHMENT A

Jordan Benson
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

December 3, 2012                at       Newark, New Jersey
Date                                     City and State

Honorable Mark Falk
United States Magistrate Judge           Signature of Judicial Officer

## ATTACHMENT A

I, Jordan Benson, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am familiar with the facts set forth herein through my personal participation in the investigation and through oral and/or written reports from other federal agents and law enforcement officers. Where statements of others are related herein, they are related in substance and part. Since this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date and time, I am asserting that it took place on or about the date and time alleged.

I.   Overview

1.   Between on or about January 2012 and on or about November 30, 2012, law enforcement was involved in an investigation into a drug trafficking organization (DTO) operating in and around Elizabeth and Newark, New Jersey.

2.   The DTO functioned, in part, by utilizing individuals operating in Puerto Rico and other locations to coordinate shipments of parcels containing kilogram quantities of cocaine and heroin through the U.S. mails to locations in Northern New Jersey, New York, Pennsylvania and Connecticut. Co-conspirators packaging the narcotics would conceal the narcotics in benign items such as candles and childrens toys, and then ship the narcotics to those areas. Individuals in New Jersey would coordinate these shipments, process or "cut" the narcotics upon receipt of the parcels, and distribute the narcotics to locations in New Jersey, Pennsylvania, Connecticut, Maryland and other locations.

3.   As the investigation progressed through, among other things, the use of confidential sources, physical surveillance and judicially-authorized electronic surveillance, law enforcement in New Jersey identified Defendant ANTONIO VAZQUEZ a/k/a "Panta," (hereinafter "DEFENDANT VAZQUEZ") as one of the sources of cocaine supplied to the DTO.

4.   Subsequent physical surveillance and judicially-authorized electronic surveillance in New Jersey led law enforcement to identify DEFENDANT VAZQUEZ operating in and around the Newark, New Jersey area.

II.   Intercepted Communications

5.   On September 14, 2012, U.S. District Judge Claire C. Cecchi authorized the interception of wire communication to and from a cellular telephone facility utilized by ROBERTO RENTAS NEGRON, a/k/a "El Duro" (hereinafter "El Duro") ("the 1st Duro Facility").[1] On October 16, 2012, Judge Cecchi authorized the interception of wire and electronic communication to and from the 1st Duro Facility as well as a second cellular telephone

---

[1] El Duro is an associate of DEFENDANT VAZQUEZ, involved in distributing narcotics in Elizabeth, New Jersey and elsewhere.

2

facility utilized by El Duro (the "2nd Duro Facility"). On November 14, 2012, U.S. District Judge Kevin McNulty authorized the interception of wire and electronic communication to and from a cellular telephone facility utilized by DEFENDANT VAZQUEZ (the "2nd Panta Facility").

6. Conversations intercepted over the 1st Duro Facility, the 2nd Duro Facility and the 2nd Panta Facility, demonstrate that DEFENDANT VAZQUEZ is involved in the conspiracy to traffic cocaine in and around the Elizabeth and Newark, New Jersey area. In the following paragraphs, I have set forth excerpts of the recorded conversations and then provided an explanation of the conversation in parenthesis. Explanations in parentheses are based on my training and experience, and that of other agents and law enforcement officers with whom I have conferred regarding the facts and circumstances of this investigation. In addition, transcripts of the conversations, are in draft form. As such, quoted passages of phone conversations referenced below are in sum and substance.

A. The Controlled Purchase of 550 Grams of Cocaine on September 18, 2012

7. On or about September 17, 2012 a confidential source with a history of reliability and credibility (the "CS"), working at the direction of the FBI, negotiated the purchase of approximately 550 grams of cocaine from El Duro.

8. On September 17, 2012, after conferring with the CS, El Duro conferred with DEFENDANT VAZQUEZ, in various intercepted calls between the 1st Duro Facility and a cellular telephone facility previously utilized by DEFENDANT VAZQUEZ (the "1st Panta Facility"). During those calls, DEFENDANT VAZQUEZ agreed to supply El Duro with an amount of cocaine required to compete the sale.

9. In particular, on September 17, 2012, El Duro spoke with DEFENDANT VAZQUEZ and asked if DEFENDANT VAZQUEZ had "anything" for him (El Duro was asking if DEFENDANT VAZQUEZ could supply him with a quantity of narcotics) and DEFENDANT VAZQUEZ told El Duro he would call him "tomorrow morning." El Duro stated that he needed "50" (El Duro was referring to a quantity of cocaine he needed in order to complete a deal) urgently and he "[did] not care about the price." El Duro then told DEFENDANT VAZQUEZ "don't make me beg for it," because he "knew [DEFENDANT VAZQUEZ had] it." DEFENDANT VAZQUEZ replied that he would give "it" (narcotics) to El Duro and would call El Duro "tomorrow very early in the morning."

10. On September 18, 2012 El Duro spoke to DEFENDANT VAZQUEZ and stated that he needed "50." DEFENDANT VAZQUEZ replied that he had "some." El Duro stated that he had them "sold already for noon time" (El Duro was saying that he had already arranged for a sale of the narcotics DEFENDANT VAZQUEZ was going to supply him with). El Duro stated that he had to "mix it so [El Duro could] make 150 more" (El Duro was saying that he had to cut the cocaine DEFENDANT VAZQUEZ would supply him with in order to increase the amount).

11. Thereafter, in a subsequent intercepted call over the 1st Duro Facility, DEFENDANT VAZQUEZ asked El Duro if he was able to "take care of it." (to cut the cocaine in order to make the sale previously discussed with DEFENDANT VAZQUEZ). El Duro responded that he "worked it all" and "made all of it" and they are "coming to get it soon" (El Duro was confirming that he successfully had the cocaine cut).

12. Following these conversations, on September 18, 2012 at approximately 3:50 p.m., while under audio and video surveillance by law enforcement, the CS traveled to the previously agreed location in Union County, New Jersey, to purchase the cocaine. After the CS arrived at the agreed location, another associate of El Duro arrived and delivered approximately 550 grams of a substance that later tested positive for cocaine to the CS on behalf of El Duro, in exchange for the previously agreed sum of money.

B. Additional Calls

13. Following the September 18, 2012 controlled purchase of 550 grams of cocaine, law enforcement intercepted numerous calls between El Duro, DEFENDANT VAZQUEZ and others discussing the supply and distribution of cocaine. Some of these calls are outlined in the following paragraphs:

14. On September 24, 2012 at 8:43 a.m. El Duro placed a call to the 1st Panta Facility, during which El Duro spoke to DEFENDANT VAZQUEZ. During the conversation, El Duro stated that he was "going to get paid" and wanted DEFENDANT VAZQUEZ to "give him more stuff" (El Duro was asking DEFENDANT VAZQUEZ to resupply him so he could re-invest in more narcotics and make more money). El Duro asked if DEFENDANT VAZQUEZ had "more stuff for him there" (referring to narcotics). DEFENDANT VAZQUEZ confirmed that he had "a lot of stuff," (a large amount of cocaine available).

15. On September 25, 2012 at 10:49 a.m., El Duro placed a call to the 1st Panta Facility, during which El Duro spoke to DEFENDANT VAZQUEZ. During the conversation, El Duro asked if there was enough for a "whole one" (El Duro was attempting to purchase one kilogram of cocaine from DEFENDANT VAZQUEZ). DEFENDANT VAZQUEZ replied "if the money is there, I will get it." El Duro asked "how much" and DEFENDANT VAZQUEZ replied "43," (referring to the price of the cocaine).

16. On October 19, 2012 at 5:43 p.m. El Duro received a call from the 2nd Panta Facility, during which El Duro spoke to DEFENDANT VAZQUEZ. During the conversation, DEFENDANT VAZQUEZ told El Duro that he was "looking for full/complete girls" (DEFENDANT VAZQUEZ was telling El Duro that he wanted full kilogram quantities of cocaine). DEFENDANT VAZQUEZ replied "now I have one" (DEFENDANT VAZQUEZ confirmed that he had a kilogram of cocaine). El Duro went on to ask if the "one" DEFENDANT VAZQUEZ had was "hard," and DEFENDANT VAZQUEZ replied that "it's

hard but it's dusty - it turns into dust" (El Duro and DEFENDANT VAZQUEZ were discussing the quality and type of narcotics).

   17. On October 20, 2012 at 12:52 p.m., El Duro placed a call to the 2nd Panta Facility, during which El Duro spoke to DEFENDANT VAZQUEZ. During the conversation, El Duro stated that he would "be needing something soon" (El Duro was asking DEFENDANT VAZQUEZ to supply him with more narcotics). DEFENDANT VAZQUEZ stated that he had "a whole baby" and confirmed that he would have "some" for El Duro (DEFENDANT VAZQUEZ was telling El Duro that he had an additional kilogram of cocaine and confirmed that he could supply El Duro).

   18. On October 21, 2012 at 8:49 a.m. El Duro received a call from the 2nd Panta Facility, during which El Duro spoke to DEFENDANT VAZQUEZ. During the conversation, DEFENDANT VAZQUEZ told El Duro he had "200 to bring to [El Duro]" (DEFENDANT VAZQUEZ was advising El Duro that he had narcotics to supply El Duro with). DEFENDANT VAZQUEZ further stated that he had "to check" but knew that it was "loose" (DEFENDANT VAZQUEZ was describing the narcotics he was going to supply El Duro with). El Duro then told DEFENDANT VAZQUEZ to bring him "a couple of pieces" (El Duro was asking DEFENDANT VAZQUEZ to bring him a quantity of the narcotics).

   19. On October 21, 2012 at 8:59 a.m. El Duro received a call from the 2nd Panta Facility, during which El Duro spoke to DEFENDANT VAZQUEZ. During the conversation, DEFENDANT VAZQUEZ told El Duro "it's good, it's strong" (DEFENDANT VAZQUEZ was describing the quality of the narcotics he was going to supply to El Duro).

   20. On October 23, 2012 at 3:57 p.m., in call number 760 intercepted over the 2nd DURO FACILITY, El Duro received a call from the 2nd Panta Facility, during which El Duro spoke to DEFENDANT VAZQUEZ. During the conversation, Duro stated that "the guy called [El Duro] and told [El Duro] to get $2,000" (El Duro was telling DEFENDANT VAZQUEZ a price he had been quoted for a quantity of narcotics). DEFENDANT VAZQUEZ further stated that "there are good kids that are coming tonight and they are the ones that [El Duro] like[s]" (DEFENDANT VAZQUEZ was telling El Duro that he had a shipment of narcotics being delivered and it was of the quality that El Duro prefers).

  C. <u>Multi-Kilogram Shipments of Cocaine to Pennsylvania and Connecticut</u>

   21. On November 6, 2012 at 2:47 p.m., El Duro received a call from the 2nd Panta Facility, during which El Duro spoke to DEFENDANT VAZQUEZ. During the conversation, DEFENDANT VAZQUEZ asked El Duro "what's going on?" and El Duro replied, "We're on it. We're working to see if we can get that out already." Then DEFENDANT VAZQUEZ asked "[is the shipper of narcotics from Puerto Rico] coming today?" and Duro replied that he would call DEFENDANT VAZQUEZ "later this afternoon" (DEFENDANT VAZQUEZ was calling to

5

see if El Duro had worked out the shipment of narcotics from a co-conspirator in Puerto Rico who was coordinating the shipments).

22. Following this conversation, and others wherein El Duro, DEFENDANT VAZQUEZ and their co-conspirators discussed and arranged for the delivery of cocaine to locations in Pennsylvania and Connecticut, law enforcement intercepted three parcels containing a total of approximately 3 kilograms of a substance that tested positive for cocaine. The parcels were addressed to locations discussed in calls intercepted over the cellular facilities utilized by the co-conspirators and were assigned tracking numbers sent over those phones.

D. The 1.25 Kilograms of Cocaine Discovered in Defendant's Stash House on November 30, 2012

23. On or about November 30, 2012 law enforcement arrested DEFENDANT VAZQUEZ in connection with the above illustrated conspiracy. Following his arrest, DEFENDANT VAZQUEZ provided a set of keys to a location he utilized to store narcotics. Law enforcement executed a consent-based search of that location and discovered approximately 1.25 kilograms of a substance that field tested positive for cocaine hidden inside that location.